**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

TIMOTHY TODD S.,

                                Plaintiff,

v.                                    No. 5:25-CV-00251
                                              (AJB/PJE)

COMMISSIONER OF SOCIAL
SECURITY,

                                Defendant.

_____

**APPEARANCES:**                           **OF COUNSEL:**

HILLER COMERFORD INJURY          JUSTIN GOLDSTEIN, ESQ.
& DISABILITY LAW
  *Attorney for Plaintiff*
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226

SOCIAL SECURITY ADMINISTRATION   GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
  *Attorney for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**PAUL J. EVANGELISTA
United States Magistrate Judge**

## REPORT-RECOMMENDATION & ORDER[1]

    Timothy Todd S.[2] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking review of a decision by the Commissioner of the Social Security

---

[1] This matter was referred to the undersigned for Report-Recommendation in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

Administration ("the Commissioner") denying his application for disability and disability insurance benefits ("DIB").  *See* Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated and remanded for further proceedings.  *See* Dkt. No. 14.  The Commissioner moves for the decision to be affirmed.  *See* Dkt. No. 16.[3]  Plaintiff filed a reply.  *See* Dkt. No. 17.  For the following reasons, it is recommended that Plaintiff's cross-motion be denied, and the Commissioner's cross-motion be granted.

## I.    Background

On September 30, 2022, Plaintiff filed a Title II application for a period of disability and DIB benefits, alleging a disability onset date of September 1, 2022.  *See* T. at 160-66.[4]  On February 16, 2023, the Social Security Administration ("SSA") denied Plaintiff's claim.  *See* T. at 61-66.  Plaintiff sought reconsideration, which the SSA denied on July 27, 2023.  *See* T. at 68-75.  Plaintiff requested a hearing.  *See* T. at 93-94.  On May 22, 2024, Administrative Law Judge ("ALJ") Gretchen Greisler held a hearing.  *See* T. 40-59.  On June 6, 2024, the ALJ issued an unfavorable decision.  *See* T. 18-35.  On February 3, 2025, the Appeals Council affirmed the ALJ's determination, and the decision became final.  *See* T. at 1-6.  Plaintiff timely commenced this action on February 26, 2025.  *See* Dkt. No. 1.

## II.    Legal Standards

### A.    Standard of Review

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652

---

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 9. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program, located at the header of each page.

(BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review ... [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotations marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].' " *Id.* (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

#### B.      Determination of Disability

"Every individual who is under a disability shall be entitled to a disability ... benefit ...." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.' " *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.' " *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the

4

> [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform ...

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id.* (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III.    The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that Plaintiff had "not engaged in substantial gainful activity since September 1, 2022, the alleged onset date." T. at 20.  At step two, the ALJ determined that Plaintiff "has the following severe impairments: cerebral palsy, spine disorder, anxiety disorder, learning disorder, attention deficit hyperactivity disorder, and mild intellectual disorder." *Id*.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." T. at 21.

Before reaching step four, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), except he can occasionally stoop, balance, crouch, crawl, kneel, and climb stairs and ramps, but cannot climb ladders, ropes, or scaffolds, or work at unprotected heights; he can stand or walk for up to one hour before needing to sit for at least five minutes, but retains the ability to remain on-task; he can sit for up to 30 minutes before needing to stand and/or walk for at least five minutes, but retains the ability to remain on-task; and he can perform simple tasks as long as instructions are given orally or by demonstration.

T. at 26.[5]  At step four, the ALJ determined that Plaintiff "is unable to perform any past relevant work." T. at 33.  At step five, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*.  The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 1, 2022, through the date of this decision." T. at 34.

## IV.    Discussion

### A.    Arguments

Plaintiff argues "the ALJ never provided 'the reasons explained in this decision' when finding Plaintiff's allegations not entirely consistent with the record. Dkt. No. 14 at 12.  More specifically, Plaintiff argues "the ALJ failed to identify the portions of Plaintiff's allegations that are inconsistent with the record, and the ALJ failed to address the factors required under [Social Security Ruling]16-3p" when evaluating plaintiff's subjective symptoms. *Id*. at 12-13.  Plaintiff

---

[5] Light work is defined as

> involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §404.1567(b).

further claims that the ALJ failed to (1) ". . . evaluate the medical opinions and prior administrative medical findings (PAMFs) pursuant to the revised regulations[,]" (2) ". . . include any limitations relating to Plaintiff's math skills into the RFC finding[,]" and (3) ". . . obtain vocational expert testimony showing that Plaintiff could perform the occupations identified with his education and cognitive skills[,]" specifically the reasoning and language requirements. *Id*. at 11, 13.

The Commissioner contends that "the ALJ properly, supportably, and reasonably evaluated the opinion[s] from" Young II Seo, M.D.; Warren E. Wulff, M.D.; Elke Lorensen, M.D.; S. Putcha, and R. Abueg, M.D. Dkt. No. 16 at 10-11.[6] Additionally, Commissioner contends that (1) "substantial evidence discussed [in his brief] (and by the ALJ) clearly undermines Plaintiff's complaints of disabling back pain[,]" and (2) "the ALJ reasonably found that Plaintiff could perform unskilled work in the national economy having Math and Reasoning Levels of 1[,]" as supported by the Vocational Expert's testimony. Dkt. No. 16 at 3, 6, 10.

**B.      RFC and Evaluation of Medical Evidence Legal Standard**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms." *Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945)). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Id*. (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))).

---

[6] S. Putcha's specialty is orthopedics. *See* T. at 61-66.

"In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150 (citations omitted)).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]' " *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted)).

Under the current standards, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather, medical opinions and PAMFs are evaluated based on their "persuasiveness." *Id.* In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2)); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" analysis, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations' "). With regard to the "consistency" analysis, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the

9

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted." *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted). "However, they must articulate how persuasive they found the medical opinions and PAMFs." *Id.* (citing 20 C.F.R. § 416.920c(b)). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.' " *Id.* (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.")

C.    **Evaluating Testimonial Evidence**

Assessment of a claimant's subjective complaints about his or her symptoms or the effect of those symptoms on the claimant's ability to work involves a two-step process.  Where a claimant complains that certain symptoms, including pain, limit his or her capacity to work, the ALJ is first required to determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce" the symptoms alleged. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  Where the ALJ finds such an impairment, the ALJ continues to the second step of "evaluat[ing] the intensity and persistence of [the claimant's] symptoms, including pain," and considering "all of the available evidence" to determine "how [the] symptoms limit [the claimant's] capacity for work." *Id*. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ must consider all of the available evidence, and must not "reject [ ] statements about the intensity and persistence of [ ] pain or other symptoms . . . solely because the available objective medical evidence does not substantiate [the claimant's] statements." *Id*. §§ 404.1529(c)(2), 416.929(c)(2).  Instead, where the objective medical evidence does not substantiate the claimant's contentions regarding his or her symptoms, the ALJ must evaluate those statements in relation to the other evidence, in order to determine the extent to which the claimant's symptoms affect his or her ability to do basic work activities. *Id*. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4).

Although an ALJ "is required to take [a] claimant's reports of pain and other limitations into account" in evaluating his or her statements, an ALJ is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  To the extent the ALJ determines that the claimant's statements are not supported by the medical record, however, the ALJ's decision must include "specific reasons for the weight given to the

individual's symptoms, be consistent with and supported by the evidence," and be "clearly articulated" for a subsequent reviewer to assess how the adjudicator evaluated the individual's symptoms. SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *8 (Oct. 25, 2017).

The factors that an ALJ should consider in evaluating the claimant's subjective complaints, where they are not supported by objective medical evidence alone, are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that the claimant has received for relief of the symptoms; (6) any other measures that the claimant employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

### 1.    The ALJ properly considered Plaintiff's subjective allegations

The ALJ found that, although Plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's subjective allegations were not entirely consistent with the longitudinal record and opinion evidence.  T. at 30.  She further noted, "[a]ll of the specific symptomatology alleged by the claimant in the evidence of record, as well as all of the specific functional limitations alleged by the claimant in the evidence of record, have been duly considered by the undersigned in accordance with Social Security Ruling 16-3p. The undersigned has also fully considered the claimant's subjective complaints of pain, fatigue, and weakness, as well as his cognitive symptomatology and psychiatric symptomatology, together with any resulting functional limitations." T. at 29.  The ALJ cited medical evidence and

12

opinions which she found persuasive and that were inconsistent with the limitations suggested by Plaintiff's subjective complaints. T. at 30-32. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effects of those symptoms."). Physical examinations from 2023 and 2024 showed that Plaintiff had a normal gait with 5/5 strength, normal sensation, and/or negative straight leg raise testing, despite noting minimal scoliosis, tenderness, and decreased range of back motion at times. T. at 453, 457, 461, 495-96, 512, 518-19, 523-24, 527, 530, 536, 542, 552, 556, 560, 564, 568. Plaintiff also reported that his back pain had improved with treatment. T. at 28. For example, in October 2022 after physical therapy, Plaintiff was doing "very well" and "no longer having hip pain and no longer having back pain", T. at 445; Plaintiff reported that he gets "good [back pain] relief from radiofrequency ablation" for "a couple of months" at a time, T. at 493; and in 2023 and 2024 treatment notes Plaintiff reported improved back pain and relief with Tramadol such that he was able to "do light housework and perform self-care[.]" T. at 550, 554, 558; *see also* SSR 16-3p (ALJ may consider a claimant's treatment in evaluating the intensity, persistence, and limiting effects of his symptoms.).

The ALJ also considered the assessments of Drs. Putcha and Abueg, neither of whom identified any postural limitations. T. at 64, 72. Similarly, the intensity, persistence, and limiting effects of Plaintiff's symptoms were inconsistent with Dr. Lorensen's finding that Plaintiff has no gross limitations for sitting, standing, walking, and using his hands. T. at 428. The undersigned finds that the objective medical evidence of record is inconsistent with Plaintiff's subjective complaints regarding the extent of his limitations. To account for Plaintiff's subjective complaints, the ALJ concluded that the record evidence as a whole supported greater

13

restrictions than those assessed by the doctors who offered opinions as to Plaintiff's physical limitations. T. at 30-31.  The ALJ noted, "the evidence received at the hearing level supports placing some additional limitations on the claimant's ability to sit, stand, and walk, due to his back pain." T. at 31.

Accordingly, remand is not warranted because the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record is supported by substantial evidence.

### 2.    The ALJ properly evaluated the medical evidence

Plaintiff argues the ALJ failed to provide more than a conclusory consistency analysis of the opinions of Warren Wulff, M.D.; S. Putcha, R. Abueg, M.D.; and Elke Lorensen, M.D.  Dkt. No. 14 at 22.  The ALJ found each of these opinions to have some persuasive value. T at 30-31. For Drs. Putcha and Abueg, the ALJ stated that their opinions were generally consistent with the evidence that was available to them;

> [n]evertheless, the assessments of the claimant by Dr. Putcha and Dr. Abueg are not consistent with all of the information that is now in the record, which shows the claimant to have greater physical limitations.  As a result, the undersigned has limited the claimant to light exertional work with a sit-stand option and some postural and environmental restrictions.

T. at 30.  As for Dr. Lorensen, the ALJ noted that her opinion "is generally consistent with the assessments of the claimant by Dr. Putcha and Dr. Abueg.  Nonetheless, the evidence received at the hearing level supports placing some additional limitations on the claimant's ability to sit, stand, and walk, due to his back pain." T. at 31.

First, although the ALJ did not cite specific evidence in these paragraphs, she was not required to do so.  *See Brault*, 683 F.3d at 477 (noting that judicial review of social security

14

cases requires examination of the entire record).  Second, the record clearly demonstrates that the ALJ considered the consistency of these opinions with the record as a whole, as she previously summarized the treatment providers' records. *See* T. at 27-30; *see Julie M. v. Comm'r of Soc. Sec.*, No. 8:23-CV-518 (MJK), 2024 WL 664413, at *11 (N.D.N.Y. Feb. 16, 2024) ("The ALJ's detailed summary of plaintiff's treatment history, provided in an earlier section of the written decision, highlight the evidence upon which the ALJ rendered this consistency assessment.") (citation omitted); *see also Kami B. v. Saul*, No. 5:18-CV-1497 (DJS), 2020 WL 247279, at *6-7 (N.D.N.Y. Jan. 16, 2020) (finding the ALJ adequately discussed supportability and consistency because, although the plaintiff "is correct that the ALJ did not, in his discussion of Dr. Allam's opinion, explain in detail why he found those opinions not to be consistent with or supported by the evidence in the record[,] . . . the ALJ explained the findings in the record earlier in his decision").  For example, the ALJ noted, "on January 27, 2023, [Plaintiff] was unable to walk on his heel without difficulty, because he said that this would cause him to experience pain. . . ." T. at 27.  Thus, the undersigned finds that the ALJ adequately explained the consistency factor.

Additionally, the ALJ did not err in finding limitations greater than those found by Drs. Putcha, Abueg, and Lorensen. *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *2 (2d Cir. Jan. 9, 2024) (affirming where the RFC was "slightly more restrictive" than opinions of consultative examiners and state agency consultants because the record suggested greater limitations); *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (summary order) (finding the ALJ's deviation "from consultative examiners' recommendations to decrease [the claimant's] RFC based on other evidence in the record" was within the province of the ALJ (emphasis in original)).  Indeed, that finding was to Plaintiff's benefit.

15

On April 22, 2024, Young II Seo, M.D. completed a medical source statement. *See* T. at 570-72. Dr. Seo opined, and the ALJ noted:

> claimant was capable of low-stress jobs, because he was able to sit for 20- to 30-minute periods; that the claimant could sit for a total of about four hours in an eight-hour workday, but could only sit for 20 to 30 minutes at one time; that the claimant could stand/walk for a total of about four hours in an eight-hour workday, but could only stand for one hour at one time; that claimant needed to take unscheduled breaks during an eight-hour workday twice a shift for 15 minutes; that the claimant could lift less than 10 pounds frequently, 10 pounds occasionally, and 20 pounds rarely; that the claimant could frequently look down, turn his head, look up, or hold his head in a static position; that the claimant could rarely twist, stoop (bend), crouch/squat, climb ladders, and climb stairs; that the claimant could frequently use his hands to grasp, turn, and twist objects; that the claimant could frequently use the finger for fine manipulations; that the claimant could frequently use his arms for reaching; that the claimant would be absent from work about four days per month; and that the claimant's experience of pain or other symptoms would occasionally be severe enough to interfere with the attention and concentration needed to perform even simpler work tasks.

T. at 31 (citing T. at 570-72). The ALJ found Dr. Seo's opinion to have "less persuasive value," noting that his treatment notes "fail[ed] to support his disabling assessment of the claimant" and his "assessment of the claimant's physical ability to perform work-related activities is inconsistent with the opinions of Dr. Wulff, Dr. Putcha, Dr. Abueg, and Dr. Lorensen." T. at 31-32.  Contrary to Plaintiff's argument that "the ALJ failed to explain how the findings are benign and how the findings are inconsistent[,]" the ALJ provided four examples.  T. at 31. Specifically, the ALJ noted:

> [f]or example, on April 22, 2024 – the same day Dr. Seo opined that the claimant was incapable of performing even sedentary work – the only positive findings contained in Dr. Seos' (sic) physical exam of the claimant were minimal scoliosis, tenderness over his bilateral lumbar paraspinals, and slightly limited lumbar spine flexion and extension secondary to pain.  Moreover, the claimant on April 22, 2024 deferred any further injection therapy, because he felt as though his precious procedures were holding up at this time.  In addition, there is no indication that Dr. Seo never conducted any testing of the claimant's attention and concentration to support the determination by Dr. Seo that the claimant's experience of pain or other symptoms was severe enough to interfere on an occasional basis with his attention and concentration.

16

*Id.* Thus, the ALJ adequately articulated the supportability factor, and the record supports the ALJ's findings. *See Tara M. B. v. Comm'r of Soc. Sec.* No. 1:22-CV-1058 (MAD/DEP), 2023 WL 7286669, at *4 (N.D.N.Y. Sept. 21, 2023) (holding the ALJ's review of the supportability factor was sufficient where the ALJ stated that the doctor's opinion was only "somewhat supported by [his] examination report," as the degree of some limitations recommended were not supported by the doctor's own objective findings), *report and recommendation adopted sub nom. Tara B. v. Comm'r of Soc. Sec.*, 2023 WL 7281138 (N.D.N.Y. Nov. 3, 2023). As for the consistency factor, similar to the above, the record clearly demonstrates that the ALJ considered the consistency of these opinions with the record as a whole, as she previously summarized the treatment providers' records.

Plaintiff further argues, "the ALJ rejected the limitations relating to time off task and absenteeism for improper reasons." Dkt. No. 14 at 17. The undersigned disagrees. As noted , the ALJ stated, "there is no indication that Dr. Seo never conducted any testing of the claimant's attention and concentration to support the determination by Dr. Seo that the claimant's experience of pain or other symptoms was severe enough to interfere on an occasional basis with his attention and concentration." T. at 31. As the Commissioner observes, this was an appropriate conclusion. Dkt. No. 16 at 17 (citing *Lenita B. v. Comm'r of Soc. Sec.*, No. 1:18-CV-6656-EAW, 2021 WL 4197817, at *6 (W.D.N.Y. Sept. 15, 2021) (finding ALJ appropriately discounted opinion suggesting off-task behavior as "speculative" as ALJ "appropriately explained the basis for the conclusion – namely, that there were 'no objective findings or diagnostic studies' consistent with the extreme limitations identified" in the opinion)). Additionally, as the ALJ noted and found persuasive, Drs. Lieber-Diaz and Shapiro opined that

17

Plaintiff has no limitation in sustaining concentration or "regular attendance at work." T. at 32-33, 71, 422-23.

In sum, undersigned finds that the ALJ properly evaluated the medical opinions and crafted the RFC based on the opinion evidence in the record.

### 3.    The ALJ considered Plaintiff's educational level

Plaintiff argues, "[t]he ALJ improperly omitted Plaintiff's mathematical deficiencies from the RFC finding and hypothetical question presented to the vocational expert, and the ALJ failed to resolve the issue of whether Plaintiff met the mathematic and language GED requirements of the occupations identified in the step five finding." Dkt. No. 14 at 25.  The undersigned finds this argument to be without force.

In the hypothetical to the Vocational Expert ("VE"), the ALJ included the limitation "that the individual is able to follow simple instructions provided that they are given orally or by demonstration."  T. at 54.  The ALJ specifically asked if the jobs "require significant reading." T. at 55.  The VE responded that the "general educational development [of the occupations] have mathematics and language at level one." *Id*.  The VE noted that the Plaintiff's past work was also at level one mathematics and language. *See id*.  "Courts have found that whether deemed illiterate or of a 'limited education,' claimants with backgrounds like Plaintiff's can perform unskilled work at Language Level 1." Dkt. No. 16 at 22-23 (quoting *Villalobo v. Saul*, No. 19-CIV-11560-CSJCM, 2021 WL 830034, at *26 (S.D.N.Y. Feb. 9, 2021) (collecting cases)).  The VE explained, "just because the DOT rates an occupation as having Language and Math Levels of 1, it does not mean that the occupation actually requires the performance for any reading and math levels."  *Id*. at 21.  This was true for Plaintiff's past relevant work, and, as the VE explained, it is also true for the occupations provided.  *See id.* at 21-22.

The VE testified that they "didn't believe" the Photocopying Machine Operator, Collator Operator, and Marker require significant reading or math skills.  T. at 55.   As the Commissioner details, these occupations only involve "'laborious work,'" and as the VE testified, there really is no language and math skills performed in labor-intensive jobs.  Dkt. No. 16 at 22 (citing T. at 55).  The ALJ ultimately adopted the hypothetical given, limiting Plaintiff to performing simple tasks as long as instructions are given orally or by demonstration, such that Plaintiff would not have to read.

Thus, the ALJ properly included Plaintiff's literacy limitations, and the VE explained how Plaintiff could perform the occupations provided.  Accordingly, remand is not warranted.

## V.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 14) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's Cross-Motion for Judgment on the Pleadings (Dkt. No. 16) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties within Local Rules.

**IT IS SO ORDERED**.

Pursuant to U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE

REVIEW. *See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);* FED. R. CIV P. *6(a), 6(e), 72.*

Date:    February 26, 2026
         Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge